LANGRILL v STINGERS LOUNGE

Docket No. 244745. Submitted April 7, 2004, at Detroit. Decided May 4,
     2004, at 9:10 A.M. Leave to appeal sought.

     Leslie Langrill brought a dramshop action against Stingers Lounge
     in the Macomb Circuit Court. The court, George E. Montgomery,
     J., granted summary disposition for the defendant pursuant to
     MCR 2.116(C)(8) and (10), ruling that the plaintiff failed to comply
     with MCL 436.1801(4) because her notice of potential dramshop
     action was served on defendant more than 120 days after she
     retained counsel to pursue a cause of action "against any person,
     persons, or entity who may be responsible" for the accident that
     caused plaintiff serious injury. The court also determined that the
     exception in MCL 436.1801(4) did not apply because plaintiff could
     have known of her dramshop claim when the driver responsible for
     the plaintiff's injury was sentenced on June 12, 2000, for criminal
     offenses and a police report indicating that the driver had been
     drinking at defendant's establishment became subject to disclo-
     sure after sentencing. Plaintiff appealed.

          The Court of Appeals *held*:

          1. The circuit court granted the defendant's motion on the
     basis of reasoning that was contrary to the plain language of the
     act and the record. The circuit court interpreted the plaintiff's
     retainer agreement with her counsel to be for the purpose of
     pursuing any entity responsible for the accident. The dramshop
     act contains a mandatory notice provision that requires written
     notice to a defendant within 120 days of a plaintiff retaining an
     attorney to pursue a dramshop action. Here, plaintiff's retainer
     agreement expressly stated that retention of the attorney was for
     the purpose of pursuing an auto negligence claim, not a dramshop
     action. Therefore, the circuit court erred in concluding that the
     120-day time limit in MCL 436.1801(4) started on October 28,
     1999, when the plaintiff retained her attorney.

          2. There was no support for the circuit court's conclusion that
     the 120-day period began to run when the driver was sentenced on
     June 12, 2000, because plaintiff could have reasonably known of
     her dramshop claim based on the information in the police report
     that indicated the driver had been drinking at defendant's estab-

lishment. In this case, plaintiff's knowledge that the driver had been drinking was irrelevant, as was the fact that she knew or should have known of a potential dramshop action. The plaintiff's affidavit, filed in response to defendant's motion for summary disposition, clearly stated that diligent efforts were made to obtain the police report before October 6, 2000, and her counsel stated, at the hearing on the motion, that after receiving the report he then initiated the dramshop action. Consequently, the 120-day time limit began to run from October 6, 2000, the date plaintiff received the police report. The plaintiff having given notice to defendant on November 27, 2000, was, therefore, well within the 120-day notice period.

Reversed.

*Attalla & Ghannam, P.C.* (by *David E. Ghannam*), for the plaintiff.

*Draper & Rubin PLC* (by *David R. Draper*), for the defendant.

Before: TALBOT, P.J., and NEFF and DONOFRIO, JJ.

NEFF, J. Plaintiff appeals as of right from an order of the trial court that granted defendant's motion for summary disposition of plaintiff's dramshop action. The trial court concluded that pursuant to MCL 436.1801(4), dismissal was proper because plaintiff failed to provide defendant with timely notice of her dramshop claim. We reverse.

I

On September 20, 1999, plaintiff was severely injured when her car was struck by a drunken driver on 8 Mile Road in Warren. The accident occurred around 3:40 A.M., and the driver fled the scene. Plaintiff suffered numerous injuries in the accident, including permanent paralysis from her chest down. Plaintiff filed an automobile negligence action against the driver, who

subsequently pleaded guilty to criminal charges.[1] Plaintiff obtained a $3 million default judgment against the driver.

On November 27, 2000, plaintiff provided defendant with notice of a potential dramshop action. The trial court granted plaintiff's motion to amend her earlier complaint to include a dramshop claim against defendant. Plaintiff alleged that the driver who struck her car had just left defendant's premises, where he had been drinking alcohol and using cocaine.[2] The trial court granted defendant's motion for summary disposition because plaintiff's notice of the dramshop claim against defendant did not comply with the time requirements set forth in MCL 436.1801(4).

## II

This Court reviews de novo a trial court's grant of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendant's motion for summary disposition "pursuant to MCR 2.116(C)(8) and/or (10)." Our review under the standard for a C(10) motion is proper because the trial court considered documentary evidence outside the pleadings. *Steward v Panek*, 251 Mich App 546, 554-555; 652 NW2d 232 (2002).

A motion for summary disposition under MCR 2.116(C)(10) "tests the factual support of a plaintiff's

---

[1] The record indicates that the driver pleaded guilty of operating a motor vehicle while under the influence of liquor, thereby causing serious personal injuries, and of failure to stop, and was sentenced to twenty-nine months to five years of imprisonment.

[2] The traffic crash report indicated that the driver's blood alcohol level was 0.29 and that his blood was positive for cocaine. The police incident report indicated that the driver stated he had been drinking at "Stingers."

claim." *Spiek, supra* at 337. The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Smith v Globe Life Ins,* 460 Mich 446, 454; 597 NW2d 28 (1999). Summary disposition is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

III

The dramshop act gives a right of action to plaintiffs who are "personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death . . . ." MCL 436.1801(3). The act contains a mandatory notice provision that requires written notice to a dramshop defendant within 120 days of retaining an attorney to pursue a dramshop claim:

> A plaintiff seeking damages under this section shall give written notice to all defendants within 120 days after entering an attorney-client relationship for the purpose of pursuing a claim under this section. Failure to give written notice within the time specified shall be grounds for dismissal of a claim as to any defendants that did not receive that notice unless sufficient information for determining that a retail licensee might be liable under this section was not known and could not reasonably have been known within the 120 days. [MCL 436.1801(4).]

The trial court concluded that plaintiff failed to meet the statutory notice requirements. The court reasoned that the 120-day period began to run when plaintiff and

her conservator, Patricia Daly,[3] entered into the representation agreement with counsel on October 28, 1999, because the agreement stated that plaintiff was employing the firm to pursue a cause of action "against any person, persons, or *entity* who may be responsible" for the accident. Therefore, the statutory 120-day period would have expired on April 25, 2000. Accordingly, plaintiff's notice to defendant on November 27, 2000, was well beyond the expiration of the statutory notice period.

The trial court further concluded that the exception in MCL 436.1801(4) did not apply. The court reasoned that plaintiff could reasonably have known of a claim against defendant at the time the driver was sentenced on June 12, 2000, because the information in the police report would have been subject to disclosure at that time and the driver himself could have been questioned. Therefore, even if the 120-day period were calculated from the sentencing date forward, the notice period would have expired before notice was provided on November 27, 2000.

The trial court's reasoning is contrary to the plain language of the statute and the record. The statute plainly states that the 120-day period begins to run from the time a plaintiff enters into an attorney-client relationship *for the purpose of pursuing a claim under this section.* Plaintiff's retainer agreement expressly stated that she retained her attorney for the purpose of an auto negligence claim, not a dramshop action:

> 2. Client alleges a cause of action for damages sustained on or about 9/20/99 as a result of auto neg[ligence] and

---

[3] Patricia Daly, plaintiff's mother, was appointed guardian and conservator of Leslie Langrill's estate after this lawsuit was commenced. The trial court granted plaintiff's motion to amend the caption of the lawsuit accordingly.

Client desires to employ Attorney to prosecute *that cause of
action* against any person, persons, or entity who may be
responsible for it. [Emphasis added.]

Read in context, the language cited by the court refer-
ences only the auto negligence action against the driver.
No record evidence established that the initial repre-
sentation agreement included a dramshop action. The
trial court therefore erred in concluding that the 120-
day period began to run on October 28, 1999, when
plaintiff entered into the representation agreement.

The trial court's reliance on *Lautzenheiser v Jolly
Bar & Grille, Inc*, 206 Mich App 67; 520 NW2d 348
(1994), was misplaced. In *Lautzenheiser, supra* at 70,
the retainer agreement did not limit the attorney's
representation to a particular cause of action, but
instead provided that the attorney was to investigate all
possible theories of recovery. Unlike in this case, in
*Lautzenheiser* the date of the retainer agreement was
properly considered the date on which the plaintiff
entered an attorney-client relationship for the purpose
of pursuing a dramshop claim.[4] *Id.* at 69.

Further, the record does not support the court's
conclusion that the statutory period began to run on the
date the driver was sentenced. The statutory notice
period expires 120 days "after entering an attorney-
client relationship for the purpose of pursuing a claim
under this section." MCL 436.1801(4). Plaintiff's

---

[4] Similarly, defendant's reliance on *Chambers v Midland Country Club*,
215 Mich App 573; 546 NW2d 706 (1996) is misplaced. In *Chambers*, this
Court applied a presumption "that the attorney-client relationship was
'for the purpose of pursuing a claim under this section' " because the
plaintiff resisted discovery regarding her relationship with her attorney
under the doctrine of attorney-client privilege and the defendant was
permitted, under court order, to learn only the date of the agreement. *Id.*,
at 577. No such presumption is necessary in this case because plaintiff
produced the representation agreement.

knowledge that the driver had been drinking alcohol is irrelevant in this case. Likewise, the fact that plaintiff knew or should have known of a potential dramshop action is irrelevant.

Plaintiff submitted her own affidavit and those of her mother and her attorney in response to defendant's motion for summary disposition. The affidavits stated that they made diligent efforts to obtain the police report concerning the accident and that the report was not released to plaintiff until October 6, 2000. At the hearing on the motion for summary disposition, plaintiff's counsel stated that upon receiving the information in the police report, he initiated a dramshop action. No evidence established that plaintiff entered into an attorney-client relationship for the purpose of pursuing her dramshop claim before receiving the report on October 6, 2000. Plaintiff gave defendant notice of the potential dramshop action the following month on November 27, 2000, well within the 120-day statutory notice period. The trial court erred in concluding that the notice was untimely and therefore erred in granting summary disposition on this basis.

Reversed.